**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| MALCOLM POLK, ) | CASE NO. 3:12-CV-2352 |
|     ) | |
|     Plaintiff, ) | |
|     ) | MAGISTRATE JUDGE |
|     v. ) | VECCHIARELLI |
|     ) | |
| CAROLYN W. COLVIN, ) | |
|     Acting Commissioner of Social ) | |
|     Security, ) | **MEMORANDUM OPINION AND** |
|     ) | **ORDER** |
|     Defendant. | |

Plaintiff, Malcolm Polk ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"),[1] determining that he was no longer eligible for Supplemental Security Insurance, under Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 423, 1381(a), after having received such benefits based on his disability as a child.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).  For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff received SSI benefits as a child based upon his mental retardation and borderline intellectual functioning.  (Transcript ("Tr.") 19.)  On December 18, 2009, after

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security.  She is automatically substituted as the defendant in this case pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

Plaintiff turned 18 years old, the agency determined that Plaintiff was no longer disabled. (Tr. 13.) The determination was upheld on reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ"). (*Id.*) On November 29, 2011, an ALJ conducted an administrative hearing. (*Id.*) Plaintiff and his mother appeared and testified, as did an impartial vocational expert ("VE"). (*Id.*) On January 25, 2012, the ALJ determined that Plaintiff was not disabled. (Tr. 22.) Plaintiff requested review, and on September 13, 2012, the Appeals Council declined to review the ALJ's decision, which became the final decision of the Commissioner. (Tr. 1.)

On September 17, 2012, Plaintiff filed a complaint[2] requesting review of the Commissioner's final decision. (Doc. No. 4.) The parties have completed briefing in this case. (Doc. Nos. 18, 19.) Plaintiff asserts that the ALJ erred in concluding that Plaintiff does not meet the criteria for disability under Listing 12.05(C) of the Listing of Impairments ("Listings"). The Commissioner responds that the ALJ correctly determined that Plaintiff did not satisfy the criteria for disability under that Listing.

## II.  EVIDENCE

**A.  Personal and Vocational Evidence**

Plaintiff completed high school, where he was in special education and job training classes. (Tr. 186.)

---

[2] Plaintiff filed his complaint in the Southern District, which transferred it to this Court because Plaintiff resides in Marion County, which is within this Court's geographical jurisdiction. (Doc. No. 2.)

**B.    Medical and Education Evidence**

    **1.    Treating Providers, Instructors and School Records**

On October 9, 2007, school psychologist Suzanne J. Fletcher, M.Ed, NCSP, evaluated Plaintiff with respect to his individualized education plan ("IEP").  (Tr. 163-78.)  She noted that Plaintiff, who was then a senior in high school, received special education services through the special education vocational training program.  (Tr. 171.)  He had earned a cumulative grade point average ("GPA") of 2.94.  (*Id*.)  Testing performed pursuant to the Weschler Adult Intelligence Scale ("WAIS") revealed that Plaintiff had a full scale IQ of 75, and was then functioning in the borderline range.  (Tr. 172.)  Plaintiff performed in the low to below average range on tests measuring his basic academic skills.  (*Id*.)  Ms. Fletcher concluded that Plaintiff demonstrated deficits in the following areas of adaptive behavior: home living, community use, self-direction and functional academics.  (Tr. 174.)

An August 2, 2009 report from Plaintiff's family physician, Anne T. Lombardo, D.O., noted that Plaintiff had a history of mild mental retardation and attention deficit disorder.  (Tr. 247.)  She noted that Plaintiff had "troubles with [the] ability to think clearly [and] make informed decisions."  (*Id*.)

    **2.    Agency Assessments and Reports**

In a July 6, 2001 consultative examination, William E. Mohler, M.A., noted that past assessments of Plaintiff, who was then ten years old, indicated that he had an IQ in the "mildly retarded range."  (Tr. 240.)  The Weshcler Intelligence Scale for Children revealed that Plaintiff had a full scale IQ of 57, a verbal IQ of 59 and a performance IQ

3

of 63, each of which fell into the "mildly retarded range." (Tr. 241.) Mr. Mohler diagnosed Plaintiff with attention deficit/hyperactivity disorder ("ADHD") and mild metal retardation. (Tr. 242.)

In an April 8, 2009 disability report, Plaintiff's mother reported that Plaintiff was working collecting carts for a grocery store. (Tr. 181.) She stated that, after Plaintiff graduated from high school, she took him off of his medications. (Tr. 188.)

On November 18, 2009, agency consultant Deanna Jamison, M.A., examined Plaintiff, who was then 19 years old and was accompanied by his father. (Tr. 289-92.) Ms. Jamison noted that, in 2007, a school evaluation indicated that Plaintiff had an IQ score in the borderline range. (Tr. 289.) Plaintiff reported that he worked pushing carts and stocking at a grocery store, where he got along well with his coworkers and supervisors. (Tr. 290.) He reported socializing with friends, and being able to cook, clean and bathe and dress himself. (*Id*.)

Ms. Jamison administered the WAIS, which reflected that Plaintiff had a full scale IQ of 71, a verbal IQ of 71, and a performance IQ of 73, all of which were in the borderline range of intelligence. (*Id*.) With respect to Plaintiff's daily functioning, Ms. Jamison assigned Plaintiff low adaptive levels in communication, daily living skills and socialization, resulting in an overall adaptive behavior composite score of low. (Tr. 291.) However, Ms. Jamison noted that there "were some contradictions" between Plaintiff's description of his daily functioning and the information provided by Plaintiff's father. (*Id*.) Accordingly, she noted that her results with respect to Plaintiff's daily functioning "should be interpreted with caution." (Tr. 290.) Ms. Jamison diagnosed Plaintiff with borderline intellectual functioning. (Tr. 291.) She opined that he was able

4

to: understand, retain and follow simple instructions; sustain attention to perform simple, repetitive tasks; and tolerate the stress and pressure of daily work activities in a repetitive, labor-type job. (Tr. 291.)

On December 8, 2009, agency consultant John J. Parsley, Psy. D., performed a mental residual functional capacity ("RFC") assessment and psychiatric review technique. (Tr. 294-96, 298-311.) In Section I of his mental RFC assessment, Dr. Parsley assigned Plaintiff moderate limitations in the ability to: understand and remember detailed instructions; carry out detailed instructions; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others. (Tr. 294-95.) In Section III of the assessment, Dr. Parsley opined that Plaintiff was capable of: understanding and remembering short, simple, one-to-three step instructions; maintaining attention and concentration for two hour periods in order to carry out short, simple, routine tasks; interacting appropriately with supervisors and coworkers in a work setting; and functioning in a stable work setting. (Tr. 296.) Dr. Parsley noted that Plaintiff would be slow to adapt to change and would struggle with planning independently for tasks. (*Id.*)

In his psychiatric review technique, Dr. Parsley diagnosed Plaintiff with borderline intellectual functioning, and assigned Plaintiff: mild limitations in activities of daily living and maintaining social functioning; and moderate limitations in maintaining concentration, persistence and pace. (Tr. 308.) He noted that, in an October 2007 assessment, Plaintiff attained a full scale IQ score of 75. (Tr. 310.)

5

### C. Hearing Testimony

#### 1. Plaintiff's Hearing Testimony

At his November 29, 2011 administrative hearing, Plaintiff testified as follows:

Plaintiff did not have a driver's license. (Tr. 50.) He attended a few regular classes in high school, but his curriculum was mostly special education. (Tr. 52.) He had collected carts and stocked shelves at a Giant Eagle supermarket, but could not recall how long he worked there. (Tr. 53.) His grandparents drove him back and forth to work. (Tr. 54.) Plaintiff agreed that he had done "pretty well" at Giant Eagle. (Tr. 77.)

Plaintiff felt that his attention span kept him from being able to work. (Tr. 56.) However, he had never had problems with attention during his work at Giant Eagle. (Tr. 56-57.) Plaintiff enjoyed reading, but could not remember the title of the last book he read. (Tr. 57.) He read magazines about sports and automobiles, and felt that he could follow and understand the articles. (Tr. 57-58.) Plaintiff had an e-mail account and was able to use it. (Tr. 58.) He cooked bacon and eggs for breakfast. (Tr. 59-60.)

Plaintiff was "pretty much like a people person" and "like[d] communicating." (Tr. 59.) He lived with his mother, and helped out around the house. (*Id.*) He enjoyed playing basketball and learning karate. (Tr. 59-60.) Plaintiff did not go to the grocery store by himself, but he did buy games on his own at a video game store. (Tr. 61-62.) Plaintiff attended church, and had participated in a "man's mentoring meeting" in North Carolina. (Tr. 89.)

6

### 2. Plaintiff's Mother's Testimony

Plaintiff's mother, Jacqueline Polk, testified as follows:

At Giant Eagle, "the little ladies looked out for" Plaintiff. (Tr. 66.) A family friend hired Plaintiff to work at the grocery store. (*Id.*) Plaintiff had "a wonderful personality," and "got pretty good little tips from . . . the people." (Tr. 67.) Ms. Polk felt that Plaintiff was depressed after returning to Ohio from North Carolina, where he had lived with his father. (*Id.*) She felt that Plaintiff was forgetful, noting that he had taken the test to obtain his temporary drivers license five times without passing. (*Id.*) Plaintiff would forget to close the door when she asked him to do so. (Tr. 68-69.) Ms. Polk was trying to get Plaintiff a job at McDonalds, but was not certain how he would perform. (Tr. 69.) She gave him an electric guitar to give him something to do other than watch television. (Tr. 72.) She allowed him to cook breakfast because "he stays focused, he stays right there at the stove." (Tr. 67.)

### 3. Vocational Expert's Hearing Testimony

The ALJ described the following hypothetical individual of Plaintiff's age, education and work history:

> [A]ssume such an individual did not have any exertional limitations on the ability to sit, stand, walk, lift, but had non-exertional limitations that . . . would require the individual . . . to avoid work place hazards such as climbing ladders, scaffold and working around hazardous machinery. The individual could occasionally balance. [T]he individual would be limited to simple, routine tasks, tasks that do not change throughout the work day. [W]ork that would not be considered fast paced or have strict production quotas and . . . the individual should not be required to plan independently to perform those tasks.

(Tr. 82-83.) The VE opined that the hypothetical individual would not be able to perform Plaintiff's past work, because the position required him to work around moving vehicles, which was precluded by the restriction prohibiting work around dangerous machinery. (Tr. 83.) The VE testified that the hypothetical individual could perform work as a machine tender, cleaner or hand packager, and noted that there were "many other[]" jobs available to the hypothetical individual. (Tr. 84-85.)

### III.   STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot,* 905

8

F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment does not prevent him from doing his past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

## IV. SUMMARY OF COMMISSIONER'S DECISION

In his January 25, 2012 decision, the ALJ made the following findings of fact and conclusions of law:

1. Plaintiff attained the age of 18 on September 7, 2008, and was eligible for SSI benefits as child for the month preceding the month in which he attained age 18. Plaintiff was notified that he was found no longer disabled as of December 1, 2009, based on a redetermination of disability under the rules for adults who file new applications.

2. Since December 1, 2009, Plaintiff has had the following severe impairments: borderline intellectual functioning and ADHD.

3. Since December 1, 2009, Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4. Plaintiff has the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: he could occasionally balance and must avoid normal workplace hazards. He is limited to simple, routine tasks that do not change throughout the

> workday, work that is not fast paced or has strict production quotas. He should not be required to plan independently.

5. Plaintiff has no past relevant work.

6. Plaintiff was born on September 8, 1990 and is a younger individual age 18-49.

7. Plaintiff has at least a high school education and is able to communicate in English.

\* \* \*

9. Since December 1, 2009, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in the national economy that Plaintiff can perform.

10. Plaintiff's disability ended on December 1. 2009, and Plaintiff has not become disabled again since that date.

(Tr. 15-21.)

## V. LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir.

1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Brainard*, 889 F.2d at 681.  A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  *Ealy*, 594 F.3d at 512.

**B.    Plaintiff's Assignments of Error**

Plaintiff argues that the ALJ erred: (1) in assessing whether Plaintiff satisfied the requirements of Listing 12.05(C); and (2) by failing to consider whether Plaintiff's impairments medically equaled the requirements of Listing 12.05(C).  The Commissioner contends that the ALJ did not err with respect to Listing 12.05(C).  This Court considers each argument in turn.

   **1.    Whether Plaintiff Satisfied the Requirements of Listing 12.05(C)**

Listing 12.05 sets forth the requirements for finding disability resulting from "mental retardation."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05.  In it's first paragraph, Listing 12.05 provides the diagnostic description of the impairment:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

> The required level of severity for this disorder is met when
> the requirements in A, B, C, or D are satisfied.

*Id*.  In other words, in order to satisfy the requirements of the Listing, an individual must, first, demonstrate the onset of the deficits described in the diagnostic description prior to age 22, and, second, satisfy the requirements of any one of the four subsections. *See Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 676 (6th Cir. 2009) (noting that an IQ below 70 was not sufficient on its own to satisfy Listing 12.05, as the claimant must "still satisfy the three-prong definition of mental retardation" and one of the subsections).

As relevant to this case, an individual may satisfy the requirement of subsection (C) by demonstrating "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id*.  In other words, subsection (C) sets forth two requirements: (1) an IQ requirement; and (2) a significant limitation requirement.

Here, the ALJ determined that Plaintiff did not satisfy the requirements of subsection (C):

> In terms of requirements in paragraph C, they are not met
> because [Plaintiff] does not have a valid verbal, perform, or
> full scale IQ of 60 through 70 and a physical or other mental
> impairment imposing an additional and significant work-
> related limitation of function.

(Tr. 16.)  Plaintiff argues that the ALJ's error in making this determination is two-fold. First, Plaintiff argues that the ALJ erred in concluding that Plaintiff could not meet the significant limitation requirement.  Second, Plaintiff notes that the record contains IQ test results placing Plaintiff in the range required by subsection (C).  The Government

12

responds that, even if Plaintiff could satisfy the requirements of subsection (C), substantial evidence supports the ALJ's conclusion that Plaintiff failed to satisfy the requirements of the diagnostic description set forth in the first paragraph of Listing 12.05.

The Government is correct.  In his decision, the ALJ noted that, according to the *Diagnostic and Statistical Manual of Mental Disorders* (4th Ed. Rev. 1994), "adaptive deficits are significant limitations in adaptive functioning in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety."  (Tr. 19, n.1.)  The ALJ determined that Plaintiff had offered no evidence of the deficits in adaptive functioning required by the diagnostic description of Listing 12.05:

> The evidence does not document concurrent deficits or impairments in present adaptive functioning as required for a diagnosis of mild mental retardation. [Plaintiff] has only a mild restriction of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation.  There is no evidence that he cannot get along appropriately with neighbors, public agencies, co-workers, supervisors, and authority in general.  He worked at a grocery store and reported no problems with co-workers and supervisors. [He] has never been fired from a job or asked to leave due to mental limitations.  Although [Plaintiff's] mother stated that [Plaintiff] was able to work because others helped him out, there is no documentation to support this claim.

(Tr. 19.)

Plaintiff challenges neither the ALJ's definition of "adaptive deficits" nor his conclusion that Plaintiff failed to demonstrate the deficits necessary to satisfy the

13

threshold requirement of Listing 12.05.  Further, substantial evidence in the record supports the ALJ's conclusion on this issue, as the record reflects that Plaintiff was able to interact with others at work and at church, care for himself, cook breakfast, work at a grocery store, and engage in hobbies such as reading magazines and playing video games.  Although an agency consultant assigned Plaintiff a "low" score with respect to adaptive behaviors, she also noted that Plaintiff and his father had contradicted one another with respect to Plaintiff's abilities and, as a result, recommended that her results be interpreted "with caution."  (Tr. 290-91.)  Accordingly, even if Plaintiff could satisfy the requirements of subsection (C), substantial evidence supports the conclusion that he does not satisfy the diagnostic description of Listing 12.05, and, thus, is not entitled to remand on this issue.

### 2. Whether Plaintiff's Condition Equaled Listing 12.05(C)

The regulations require an ALJ, at step three, to determine whether a claimant has "an impairment(s) that meets or equals" one of the Listings.  20 C.F.R. § 404.1520(a)(4)(iii).  Here, Plaintiff argues that the ALJ erred in failing to consider whether Plaintiff's impairments medically equaled Listing 12.05(C) under 20 C.F.R. § 404.1526(b)(1), which sets forth the following standard for medical equivalence:

> (i) If you have an impairment that is described in (the Listings), but --
>
>> (A) You do not exhibit one or more of the findings specified in the particular listing, or
>>
>> (B) You exhibit all of the findings, but one or more of the findings is not as severe as specified in the particular listing,
>
> (ii) we will find that your impairment is medically equivalent

14

> to that listing if you have other findings related to your
> impairment that are at least of equal significance to the
> required criteria.

Plaintiff argues that his ADHD caused him "significant concentrational limitations" that, in combination with a full scale IQ score of 71, equal Listing 12.05(C) because his difficulty concentrating results in significant work-related limitations.  (Plaintiff's Brief ("Pl. Br.") at 10.)  The Commissioner responds that the ALJ did consider whether Plaintiff's impairments medically equaled one of the Listings, and argues that substantial evidence supports the ALJ's conclusion on this issue.

The Commissioner is correct.  In his findings of fact and conclusions of law, the ALJ specifically determined that, "[s]ince December 1, 2009, [Plaintiff] did not have an impairment or combination of impairments that meets *or medically equals* the severity of one of the listed impairments . . . ."  (Tr. 15) (emphasis added).  Further, substantial evidence supports the conclusion that Plaintiff's ADHD was not sufficiently severe to equal the significant limitations requirement of subsection (C).  Although Plaintiff had been diagnosed with ADHD, he testified that his difficulties in concentration did not interfere with his work at Giant Eagle.  (Tr. 56-57.)  Plaintiff points to no specific evidence in the record to support his argument that his ADHD caused him concentration difficulties equivalent to the significant limitation required by subsection (C).  Accordingly, Plaintiff's argument on this point lacks merit.

## VI. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: May 3, 2012